In re Thomas Otis BOSKET (aka Thomas O. Bosket, aka Thomas Bosket, aka Tom Bosket), Debtor.

Peter Scribner, As Trustee, Plaintiff,

v.

Thomas Otis Bosket and Donald O. Bosket, Defendants.

Bankruptcy No. 05–21992.
Adversary No. 06–2073.

United States Bankruptcy Court,
W.D. New York.

May 25, 2007.

Peter H. Baker, Hammondsport, NY, for Debtor.

Warren H. Heilbronner, Boylan, Brown, Rochester, NY, for Plaintiff.

Peter Scribner, Rochester, NY, pro se.

David D. MacKnight, Lacy, Katzen, David L. Rasmussen, Lacy Katzen LLP, Rochester, NY, for Defendants.

## DECISION & ORDER

JOHN C. NINFO, II, U.S. Bankruptcy Judge.

### BACKGROUND

On April 25, 2005, Thomas Otis Bosket (aka Thomas O. Bosket, aka Thomas Bosket, aka Tom Bosket) (the "Debtor") filed a petition initiating a Chapter 7 case and Peter Scribner, Esq. (the "Trustee") was appointed as his Chapter 7 Trustee.

On June 27, 2005, the Trustee conducted a Section 341 Meeting of Creditors at which an attorney for one of the Debtor's creditors produced a copy of a recorded deed, dated December 14, 2001 (the "Parent Deed"), from the Debtor's parents, Donald and Veta Bosket, as Grantors, to the Debtor, as Grantee, which conveyed to him their fee interest in real property commonly known as 4910 Meads Creek Road, Painted Post, New York (the "Meads Creek Road Property"). The Parent Deed reserved to Donald and Veta Bosket a life estate in the Meads Creek Road Property and also provided that "the Grantors while living shall have the limited power to appoint the remainder interest in these premises to another, except to themselves, their creditors or a governmental agency" (the "Power of Appointment").

On June 25, 2006, after the Debtor had received his discharge on August 24, 2005 (the "Discharge"), the Trustee commenced an Adversary Proceeding against the Debtor and Donald Bosket. The Trustee's Complaint set forth several causes of action, including a First Cause of Action to revoke the Debtor's Discharge pursuant to Sections 727(d)(1) and 727(a)(2)(B) [1].

The Trustee's Complaint in the Adversary Proceeding for its First Cause of Action against the Debtor, asserted that: (1) the Debtor alleged that it was at his Section 341 Meeting of Creditors on June 24, 2005 that he and his attorney first learned of the existence of the Parent Deed and his interest in the Meads Creek Road Property; (2) by deed dated August 1, 2005, the Debtor transferred his interest in the Meads Creek Road Property to his father, Donald Bosket (the "Debtor Deed") for no consideration and without notice to or the consent of the Trustee; (3) the Debtor did not advise the Trustee of the transfer of his interest in the Meads Creek Road Property prior to the entry of his Discharge on August 24, 2005; (4) the Trustee did not learn of the transfer of the Debtor's interest in the Meads Creek Road Property until October 2005; (5) the Debtor transferred his interest in the Meads Creek Road Property after the date of the filing of his petition, and before his Discharge was entered, with the intent to hinder, delay or defraud his creditors and the Trustee; and (6) the Trustee did not know about the transfer before the Debtor's Discharge was entered, so that the Debtor's Discharge was obtained by fraud and should be revoked.

The Debtor interposed an Answer to the Trustee's Complaint in the Adversary Proceeding and on October 26, 2006, he filed a Motion for Summary Judgment (the "Motion for Summary Judgment") which requested that the Court enter an order dismissing the Trustee's Complaint. The Court granted the Motion for Summary Judgment with respect to all of the causes

---

1. Section 727(d)(1) provides that:
   (d) On request of the Trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if-
   (1) such discharge was obtained through the fraud of the debtor and the requesting party did not know of such fraud until after the granting of such discharge[.]
   Section 727(a)(2)(B) provides that:
   (a) The Court shall grant the debtor a discharge, unless-

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-
(B) property of the estate, after the date of the filing of the petition[.]
11 U.S.C. § 727 (2007).

of actions contained in the Trustee's Complaint with the exception of the First Cause of Action, which requested that the Court revoke the Debtor's Discharge.

When it denied the Motion for Summary Judgment, the Court indicated that it would consider the Discharge to have been obtained by fraud for purposes of Section 727(d)(1) and would revoke the Debtor's Discharge if it were shown that: (1) the Debtor had transferred property of the estate, in this case his interest in the Meads Creek Road Property, post-petition with the intent to hinder, delay or defraud his creditors and the Trustee; and (2) the Debtor did not advise the Trustee of the transfer and the Trustee did not otherwise know of the transfer before the granting of the Discharge.

At a Trial conducted on May 8, 2007, through the Debtor's testimony and the exhibits produced by the Trustee, the Court learned that: (1) the Debtor had been a building contractor for approximately thirty-eight (38) years and had been the elected Supervisor of the Town of Campbell for twenty-nine (29) years; (2) the Meads Creek Road Property consisted of a dwelling on approximately 83.7 acres of land; (3) when the Debtor filed his petition, his mother had passed away and his father was approximately eighty-four (84) years old and in good health; (4) according to the Debtor's testimony, he never knew of the existence of the Parent Deed until his Section 341 Meeting of Creditors; (5) according to the Debtor's testimony, subsequent to his Section 341 Meeting of Creditors, he was advised by his bankruptcy attorney "that he needed to get his name off the deed"; (6) as a result of the alleged advice of his bankruptcy attorney the Debtor met with attorney Michael Martino ("Martino"), his father's attorney who had prepared the Parent Deed; (7) in his meeting with Martino, the Debtor did not advise him that he had filed bankruptcy, nor did they have any other conversations as to why the Debtor wanted to "get his name off the deed"; (8) Martino's office prepared the Debtor Deed;; and (9) prior to executing the Debtor Deed, the Debtor had not advised his father, Donald Bosket, that he had filed a bankruptcy petition.

From the pleadings and proceedings in connection with the Motion for Summary Judgment, the parties and the Court learned that Donald Bosket, by Deed recorded on July 10, 2006, exercised his Power of Appointment and conveyed the remainder interest in the Meads Creek Road Property to his daughter, Connie L. Younker.

### DISCUSSION

▇ The Debtor's Discharge must be revoked and a discharge denied pursuant to Section 727(d)(1), for the following reasons:

1. Even if he was not aware of the Parent Deed or the transfer it evidenced until his Section 341 Meeting of Creditors, at the time of the filing of his petition the Debtor was the record owner of the Meads Creek Road Property, subject to his father's life estate interest and Power of Appointment, which was Section 541 property of the estate;

2. On the date of his Section 341 Meeting of Creditors, shortly thereafter when the Debtor has alleged he discussed the Parent Deed with his bankruptcy attorney, and on August 1, 2005 when he has alleged he met with Martino, the Debtor was a sophisticated businessman and public servant, who, as a building contractor and Town Supervisor, was necessarily used to dealing with attorneys and asking hard questions of them, so the Court does not find credible any assertion that he did not know or understand exactly why he was

being advised to "get his name off the deed;"

3. Notwithstanding what his conversations may or may not have been with his bankruptcy attorney, the Debtor had to know that the only reason to "get his name off the deed" at that time and under the facts and circumstances presented was that unless he did something, somehow his bankruptcy estate, or perhaps the several creditors who had an attorney present at the Section 341 Meeting of Creditors and subsequently filed nondischargeability adversary proceedings against him, would have a right to all or a portion of his interest in the Meads Creek Road Property;

4. No matter what the Debtor's many intentions may have been in executing and having the Debtor Deed recorded,[2] those intentions must have included the intention to eliminate any interest his bankruptcy estate, Trustee and/or creditors might have in all or a portion of the interest he owned in the Meads Creek Road Property as a result of the Parent Deed;

5. On August 1, 2005, the Debtor's interest in the Meads Creek Road Property was a valuable asset of the Debtor's estate. Notwithstanding that it was subject to Donald Bosket's life estate interest and Power of Appointment: (a) the Meads Creek Road Property consisted of 83.7 acres and a dwelling; (b) Donald Bosket was eighty-four (84) years old; and (c) in connection with the Power of Appointment, which admittedly could and ultimately did, eliminate the Debtor's interest in the Property, Donald Bosket had not exercised the Power between December 14, 2001 and

August 1, 2005, and he did not know that the Debtor had filed a bankruptcy petition. Even in his conversations with Martino, Donald Bosket's attorney, the Debtor did not advise him that he had filed a bankruptcy petition.

A snapshot of these facts and circumstances on August 1, 2005 (the "August 1 Facts") clearly indicates that the Debtor's remainder interest had a significant actuarial and actual value.

As for the Debtor's assertions in the Motion for Summary Judgment that the Debtor's remainder interest had absolutely no value because of the Power of Appointment, this Court rejects that assertion. On August 1, 2005, the reality was as it is stated above. Anything beyond that it is pure speculation, for example, whether: (a) Donald Bosket would otherwise have learned about the Debtor's bankruptcy if the Debtor continued to wish to keep it a secret from him (the Debtor had been in bankruptcy for over three months by then and Donald Bosket did not know); (b) Donald Bosket would have passed away before learning of the Debtor's bankruptcy and exercising the Power of Appointment; and (c) countless other speculations.[3]

Furthermore, if the Debtor believed his interest in the Meads Creek Road Property had no value, why would he have transferred it on August 1, 2005? Can the transfer of the Debtor's interest with a clear intent to hinder, delay or defraud his creditors and the Trustee by putting that interest beyond their reach, be ignored or excused because of speculation that, in light of his interest, the unexercised Power of Appointment actually had no realizable

2. The copy of the Debtor Deed admitted at Trial does not show that it was recorded. However, as part of the Motion for Summary Judgment, the Court was advised that the Debtor Deed was recorded.

3. If this Court conducted a trial on August 1, 2005 to value the Debtor's interest in the Meads Creek Road Property, based upon the August 1 Facts, this Court could not find that the interest had no value.

value when he obviously transferred it believing that it did?

6. This Court rejects the Debtor's argument in connection with the Motion for Summary Judgment that because the Debtor was never aware of the recording of the Parent Deed that he had not accepted the delivery of an interest in the Meads Creek Road Property for purposes of New York Real Property Law, so that no transfer had taken place and he was not in fact the owner of an interest in the Meads Creek Road Property on the date of the filing of his petition or on August 1, 2005.[4]

Furthermore, the execution of the Debtor Deed, which acknowledged the conveyance to him of an interest in the Meads Creek Road Property by the Parent Deed, constituted an acceptance and ratification of the interest as of the date of the filing of his petition;[5]

7. The Court also rejects the argument that there was no effective transfer accomplished by the execution and recording of the Debtor Deed because the Trustee could have avoided it under Section 549. The acceptance of that argument would make the provisions of Section 727(a)(2)(B) meaningless, since there could never then be a transfer it describes and prohibits;

8. The Court also rejects any argument that it was the Trustee's obligation to do anything that would prevent the Debtor from executing, delivering and/or recording the Debtor Deed or to somehow have taken steps that would have allowed him to learn about the Debtor Deed prior to the entry of the Debtor's Discharge. Trustees are not expected to assume that honest debtors seeking a discharge and fresh start will violate the provisions of Section 727(a)(2)(B);

9. The evidence is undisputed that the Trustee did not know about the transfer of the Debtor's interest in the Meads Creek Road Property prior to the entry of the Debtor's Discharge;

10. Had this Court been aware, through an appropriate adversary proceeding commenced by the Trustee, that the Debtor had transferred his interest in the Meads Creek Road Property post-petition to Donald Bosket without the knowledge or consent of the Trustee under the circumstances presented in this Adversary Proceeding, it would have denied the Discharge. As a result, in this Court's view, by transferring his interest in the Meads Creek Road Property for no consideration and with the intent to hinder, delay or defraud his creditors and the Trustee, and not advising the Court or the Trustee of the transfer prior to the entry of his Discharge, the Debtor's Discharge was obtained by fraud; and

11. A Discharge is for an honest but unfortunate debtor. Here, the actions of the Debtor, a sophisticated businessman and elected public official, transferring property of the estate that he believed had value, with the clear intent to put it out of the reach of his Trustee and creditors, and not advising the Trustee of the transfer,

---

4. In *In re Gorenflo*, 351 B.R. 64 (Bankr. W.D.N.Y.2006), my colleague, Judge Carl L. Bucki, on similar facts, determined that a debtor could not repudiate such an interest post-petition, since it was Section 541 property of the estate and only the Trustee had the power to repudiate any such interest.

5. BEING THE SAME PREMISES conveyed by a deed dated December 14, 2001 from Donald O. Bosket and Veta J. Bosket to Thomas O. Bosket and recorded March 1, 2002 in the Office of the Steuben County Clerk in Liber 1759 of Deeds at page 23. The said Veta J. Bosket having died December 14, 2004, hereby relinquishing the life estate of Veta J. Bosket reserved in the aforementioned deed recorded in Liber 1759 of Deeds at page 23.

were not those of the honest debtor properly fulfilling his duties, including his Section 521 duties to cooperate with the Trustee and surrender property of the estate to the Trustee, so as to earn for him a discharge from his $194,822.81 of scheduled unsecured debt.

## CONCLUSION

The Debtor's Discharge is hereby revoked and a discharge is denied. Playing fast and loose with valuable assets of the estate post-petition is not permissible.

**IT IS SO ORDERED.**